USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 8/7/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TASHEEM MORRIS,

           Petitioner,

v.

ADA MORTON,

           Respondent.

No. 18-CV-731 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Petitioner Tasheem Morris, proceeding *pro se*, petitions for a writ of habeas corpus challenging his New York state convictions for murder in the second degree (N.Y. Penal Law § 125.21(1)) and two counts of criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03(1)(b) and § 265.03(3)). Petitioner argues that the trial court's erroneous admission of a hearsay statement made by the decedent was not harmless, and, alternatively, that his sentence should be reduced. For the reasons set forth below, the petition is denied.

## BACKGROUND[1]

Petitioner was tried and convicted for the murder of his aunt Ashley Jackson's boyfriend, Anthony Cabrera, in the hallway of the Manhattan apartment building where he, his aunt, and Cabrera lived. Pet. Memo. at 4 (Dkt. 3) ("Pet."); *People v. Morris*, 41 N.Y.S.3d 715 (N.Y. App. Div. 2016), *leave to appeal denied*, 76 N.E.3d 1084 (N.Y. 2017). He was also convicted of two counts of criminal possession of a weapon in the second degree. *Morris*, 41 N.Y.S.3d 715. Petitioner was sentenced to an aggregate term of 20 years to life. *Id.*

---

[1] The Court assumes familiarity with the facts underlying this case, *see* Dkt. 3 at 3–12 and Dkt. 11-1 at 3–14 (Ex. C), and recites only those facts relevant to Petitioner's present petition.

Petitioner appealed his conviction to the Appellate Division of the Supreme Court of New York, First Department. *See* Pet. at 21. He argued, *inter alia*, that the trial court had erroneously admitted, under the "state of mind" exception to the hearsay rule, hearsay statements the decedent made before his death. *Id.* at 2. The decedent's brother testified at trial that the decedent, speaking to his brother over the phone after exchanging tense looks with Petitioner outside their apartment and shortly before the shooting, had stated, "I feel like something bad is going to happen. I'm getting like a vibe . . . [with] Ashley's nephew. . . [H]e just keep looking at me and I don't know. Like, I feel like we about to fight or something is going to happen." Giuria Transcript at 330:5–12 (Dkt. 14-1) ("Tr."). Petitioner argued that it was error to admit this statement because there was no evidence Petitioner was aware of the decedent's fear, the only basis on which the statement could have been relevant to this case. Pet. App. Brief at 15–16 (Dkt. 11-1) (Ex. B) ("App."). In support of this argument, Petitioner relied heavily on *United States v. Brown*, 490 F.2d 758 (D.C. Cir. 1973), which cautions against admitting overly prejudical evidence via the state of mind exception: "The principal danger [of admitting such statements] is that the jury will consider the victim's statement of fear as somehow reflecting on defendant's state of mind rather than the victim's—*i.e.*, as a true indication of defendant's intentions, actions, or culpability." *Id.* at 766. Petitioner argued that the admission of this statement constituted reversible error. App. at 22. Petitioner also urged the Appellate Division to reduce his sentence under the circumstances of the case. *Id.* at 23.

The Appellate Division agreed that the admission of the statement was erroneous, but deemed it harmless:

> Even though the court should have excluded evidence that, during a phone conversation shortly before the homicide, the victim told his brother that defendant had stared at him, causing him to fear that something bad was going to happen, the error was harmless. There was overwhelming evidence of defendant's guilt, and

2

other evidence established both the fact of the "staring" incident and the antagonism between defendant and the victim that provided a motive for the crime.

*Morris*, 41 N.Y.S.3d 715 (citation omitted). The Appellate Division also declined to reduce the sentence. *Id.* Petitioner thereafter sought leave to appeal to the New York Court of Appeals on the evidentiary issue, which the Court of Appeals denied. *See Morris*, 76 N.E.3d 1084.

Petitioner petitions for a writ of habeas corpus on the grounds that this error was not harmless and that, under the circumstances of his case, his sentence should be reduced.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a habeas petition on the basis of a claim adjudicated on the merits in state court unless the adjudication of that claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[2] A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). This represents a "highly deferential standard for evaluating state-court rulings." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

## DISCUSSION

### I. Admission of the Decedent's Hearsay Statement

Petitioner claims that the erroneous admission of the decedent's statement was not harmless. As an initial matter, the Court will assume for purposes of this petition that the admission

---

[2] A federal court may also grant the writ if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Petitioner bases his petition on the state court's application of the law, rather than on a determination of the facts, so (d)(2) is not relevant to this discussion.

3

of this evidence was indeed erroneous. Respondent does not contend otherwise. Even assuming, too, that such admission violated clearly established federal law does not, however, end the Court's inquiry. *Evans v. Fischer*, 712 F.3d 125, 135 (2d Cir. 2013). Instead, it triggers the question of whether the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation and internal quotation marks omitted); *see Jackson v. Conway*, 763 F.3d 115, 141 (2d Cir. 2014) (conducting a "substantial and injurious effect" analysis under *Brecht* after determining that the state appellate court had objectively unreasonably applied Supreme Court precedent).[3]

"In assessing 'whether the erroneous admission of evidence had a substantial and injurious effect on the jury's decision, [the Court considers] the importance of the . . . wrongly admitted [evidence], and the overall strength of the prosecution's case." *Wood v. Ercole*, 644 F.3d 83, 94 (2d Cir. 2011) (*quoting Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000)). Part of this inquiry involves determining "whether the evidence 'bore on an issue . . . plainly critical to the jury's decision,' and 'whether [it] was material to the establishment of the critical fact, or whether it was instead corroborated and cumulative.'" *Id.* (internal quotations omitted). "The strength of the prosecution's case without the erroneously admitted evidence is probably the single most critical factor in determining whether the error was harmless." *Jackson*, 763 F.3d at 140 (internal quotations and citations omitted); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) ("The standard in our view should therefore be whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the

---

[3] In *Fry v. Pliler*, 551 U.S. 112 (2007), the Supreme Court explained that application of the *Brecht* test "obviously subsumes" an alternative test whereby a court would "assess whether the state appellate court acted reasonably in determining that the error was 'harmless beyond a reasonable doubt'" under *Chapman v. California*, 386 U.S. 18 (1967). 551 U.S. at 120. Accordingly, the Court need only assess, under *Brecht*, whether the error in admitting the decedent's hearsay statement "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638 (quotation omitted).

basis for conviction or to remove a reasonable doubt that would have existed on the record without it.").

In light of the substantial evidence inculpating Petitioner, admission of the decedent's hearsay statement did not have a substantial and injurious effect on the jury's decision. Petitioner argues that the trial court put too much emphasis on the other evidence admitted at trial, but a court considering whether error is harmless must review the erroneously admitted evidence "'in light of the entire record before the jury.'" *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 73 (2d Cir. 2011) (quoting *Collins*, 755 F.2d at 19). Here, the record contained substantial evidence supporting a finding of guilt. First, Petitioner's ex-girlfriend testified—pursuant to a material witness order—that within days of the shooting, Petitioner admitted to her that he shot the decedent. Washington Tr. at 522:3–10.[4] Second, Wakeem Gonzalez, a friend of the decedent, testified that he witnessed Petitioner reach toward his crotch as Gonzalez and the decedent walked past Petitioner in the hallway moments before the decedent was shot. Gonzalez Tr. at 471–74, 476–77, 497. Third, the same friend testified that, after the decedent had been shot, he cried out to his girlfriend Ashley, "Your fucking uncle shot me." *Id.* at 478:16–20.[5] Fourth, Petitioner acted evasively immediately after the shooting, fleeing the scene, enlisting his wife to

---

[4] As Petitioner notes, his ex-girlfriend stated on cross-examination that several months after the shooting, she told Petitioner's trial counsel that Petitioner was not the person who shot the gun. Pet. at 11. Respondent rightly counters, however, that the ex-girlfriend acknowledged meeting with the prosecutor for "a whole bunch of months" prior to that conversation, and that never in these meetings did she say Petitioner told her he was not the shooter. Resp. at 12 (quoting Washington Tr. at 542–43).

[5] Although he is three years older than Ashley Jackson, Petitioner is her nephew, not uncle. *See* Guiria Tr. at 331:15–16 ("Q: Who is Ashley's nephew? A: Tasheem."); Jackson Tr. at 373 (identifying Petitioner as her "nephew"). It appears from the trial transcript, however, that Gonzalez, who was close to Petitioner and Ms. Jackson, referred to Petitioner as "Ashley's uncle." *See* Gonzalez Tr. at 466:6–8. As there was no testimony regarding any biological uncle of Ashley Jackson in this case, and as Petitioner did not contest the identification of him as "Ashley's uncle," the Court assumes that the decedent's utterance— "your fucking uncle shot me"—referred to Petitioner.

visit the building to "see what was going on," and refusing to surrender for over two weeks despite knowing the police were looking for him. Anderson Tr. at 448–49; Washington Tr. at 521.

Finally, and perhaps most damaging to Petitioner's harmlessness argument, there was demonstrated, preexisting ill will between Petitioner and the decedent. The jury heard undisputed testimony that Petitioner had engaged in a physical altercation with the decedent two months prior to the shooting, resulting in injuries to both of them. Jackson Tr. at 427:8–15; Pet. at 4. The jury also heard testimony that, just before the shooting, Petitioner and his friend refused to let the decedent into the apartment building. Gonzalez Tr. at 466:20–23; Pet. at 8. Although admitting the decedent's statement to his brother over the phone bolstered the theory that Petitioner bore aggression toward the decedent shortly before the shooting, other evidence amply established this theory, rendering the decedent's hearsay statement "cumulative." *Wood*, 644 F.3d at 94. The entire record provided a sufficient basis for the jury to convict Petitioner even without knowledge of the decedent's statement that another fight with Petitioner was looming. The decedent's hearsay statement was therefore not "crucial, critical, [and] highly significant" evidence, and its admission did not deny Petitioner his constitutional right to a fair trial. *McKinnon*, 422 F. App'x at 73 (quoting *Collins*, 755 F.2d at 19).

## II. Sentence Reduction

Petitioner next seeks a reduction in his sentence "[b]ecause of psychological problems." Pet. at 8. This claim, however, is both unexhausted and procedurally defaulted. 28 U.S.C. § 2254 provides that federal courts may not grant a petition for habeas corpus relief unless "the applicant has exhausted the remedies available in the courts of the state" or "there is an absence of available State corrective process." §§ 2254(b)(1)(A), (b)(1)(B)(i). "Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (citations and alterations omitted). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294–95 (2d Cir. 2003) (citation omitted). Presenting the claim to an intermediate state court will not suffice for exhaustion purposes, because "[e]xhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had." *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 190 n.3 (2d Cir. 1982).

Petitioner did present his excessive sentence claim to a state court (the Appellate Division), but not to the highest state court from which he could have received a decision (the New York Court of Appeals). After the Appellate Division rejected his claim, Petitioner, through his counsel at the time, requested that the Court of Appeals consider whether the erroneous admission of the decedent's hearsay statement was harmless, but did not mention the excessive sentence claim in this request. *See* Answer, Ex. F. Thus, Petitioner has not exhausted state court remedies.

Moreover, Petitioner may not return to state court to exhaust this claim, since a person is entitled to only one request for leave to appeal to the New York State Court of Appeals and Petitioner has already availed himself of that opportunity. *See* N.Y. Court Rules § 500.20(a). Because Petitioner has not attempted to demonstrate that "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court is barred from considering his excessive sentence claim. *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009).

## CONCLUSION

For the foregoing reasons, the Court denies the petition for a writ of habeas corpus. As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: August 7, 2019
        New York, New York

Ronnie Abrams
United States District Judge